AT

## DAVENPORT, APRIL TERM, A. D. 1884.

IN THE THIRTY-EIGHTH YEAR OF THE STATE.

---

PRESENT:

Hon. JAMES H. ROTHROCK, CHIEF JUSTICE.
  " JOSEPH M. BECK,
  " AUSTIN ADAMS.
  " WILLIAM H. SEEVERS,    } JUDGES.
  " JOSEPH R. REED,

---

## THE WILL OF OLSON.

1. **Will**: DOMICILE OF TESTATOR: JURISDICTION OF PROBATE COURT. The place where a person lives and dies is taken to be his domicile until facts adduced establish the contrary; and where, as in this case, the testator, being in poor health, left his place of residence in Illinois, with the intention of making his future home elsewhere, and, after staying a short time at each of several places in quest of health and business, he despaired of regaining his health, and finally settled down with his widowed mother, whose home was in Taylor county, Iowa, intending to remain there an indifinite time, and at which place he was married and made his will, and soon afterward died, *held* that Taylor county, Iowa, was his domicile at the time of his death; that the circuit court of that county had jurisdicition of proceedings to probate the will; and

that it was error to dismiss such proceedings, upon the motion of alleged creditors resident in Illinois, who claimed that the testator had his domicile in that state, and that the will should be probated there.

*Appeal from Taylor Circuit Court.*

TUESDAY, APRIL 8.

THIS is a proceeding in which it was sought to probate the last will and testament of P. S. Olson, who died in Taylor county, in this state, in December, 1882. The will was filed in the office of the clerk of the Taylor circuit court, and a time was fixed for the probate thereof. Certain parties, resident of the state of Illinois, claiming to be creditors of the testator, appeared and moved to dismiss the proceeding, because the testator at the time of his death was not a resident of the state of Iowa, and had no property in this state; and because he was a resident of the state of Illinois, and the circuit court of Taylor county had no jurisdiction to probate the will.

The widow of the testator, and his mother and sister, devisees under the will, took issue upon the motion, by averring that the testator at the time of making said will, and at the time of his death, had his domicile in Taylor county, Iowa. The motion to dismiss was heard by the court, and was sustained, and the probate of the will was refused. The widow and other proponents of the will appeal.

*Finn, Hedrick & Leonard* and *H. Bigelow,* for appellants.

*Shepard & Marston,* for appellees.

ROTHROCK, CH. J.—I. It is conceded that the will was executed in Taylor county, and that, shortly after it was made, the testator died in that county. The witnesses to the will were residents of that county, and the will remained in the county, and was there presented for probate. There is some question in our minds as to whether it should not have been there proved, no matter where the domicile or residence of

the testator was at the time of his death. But, as the court below and the parties in this appeal appear to be of the opinion that the domicile of the testator is a material question, and as a determination thereof disposes of the case very satisfactorily, as it appears to us, we will proceed to a consideration of the appeal as it is presented to us. The property bequeathed by the will is the avails of certain life insurance, and we presume the cause of the contest is whether the estate shall be administered under the laws of Illinois or of Iowa.

It appears from the evidence that the deceased was engaged in business at Woodhull, Henry county, Illinois, for three or four years prior to September, 1882. He was at that time an unmarried man, and made his home at Woodhull. In September, 1882, he sold out his business at Woodhull, and made a trip to St. Louis, Missouri, returning in October following. Afterwards he took a trip west, visiting Iowa and Kansas, looking for a location in which to engage in business. He returned to Woodhull, and voted at the general election in November of that year. From this point the court found the following facts relating to his movements and acts up to the time of his death:

"That about the tenth of November he gave up his rooms which he had been occupying, sold all his personal effects, except some pictures, oil paintings, an office chair, and some small souvenirs which he retained, declaring that it was his intention to leave and not again return. He left the town of Woodhull, and, being in poor health, went to Eureka Springs, Ark., stopping there some two weeks. He visited his uncle at Salina, Kan., having in view a place to locate in business, or to select a place for a home.

"That in the month of December, his health still continuing to be poor, he left his uncle's in Salina, Kan., having previously sent for a young lady with whom he was at that time engaged to be married, who joined him there, and they two came to his widowed mother's, (in Taylor county, Iowa,)

who lived upon a farm, having something like a year and a half prior thereto removed from Illinois to said farm.

"The disclosed purpose of said deceased in coming to his mother's home was to stay until he got well, with no evidence disclosing a purpose to return to Illinois at any time for the purpose of living there.

"That he stayed with his mother something like one week, when he left his mother's home to come to the town of Bedford in said county, for the purpose of procuring medical treatment. That in the course of three or four days thereafter he was married to the lady to whom he had been engaged, made his will the same day, in which he described himself as a resident of Woodhull, Ills., and died the next day after so making his will."

We think it should further have been found, as a fact from the evidence, that the deceased, when he went to his mother's house, did not expect to recover. While at the home of his uncle in Salina, Kansas, he addressed a letter to his mother and sister, in which he used this language: "I would like to come out and stay with you if I could get there. The folks here are as good and kind to me as they can possibly be. Still I am homesick, lonesome, and completely discouraged. I may live six months, and probably not that many days. I am certainly in a very bad fix, and have very few chances of regaining my health."

There is no dispute that, when deceased left Woodhull, in November, he declared his purpose to abandon that place as a home, and all his acts at that time and afterwards show that his removal therefrom was actual and permanent. He took his trunk and clothing, a gun, and his watch, and (as we understand it) his life insurance policy with him. His trunk was lost, or not shipped to him immediately after he arrived at his mother's house. The key thereto was left with his wife, and the trunk arrived after his death. A brother, who is an Illinois creditor, (or claims to be such,) without the consent of the wife, had the trunk shipped to Illinois, and, by

some means not disclosed in evidence, he obtained the life insurance policy and sent it to one of his attorneys. The widow testifies as follows: " I never authorized him to enter that trunk. The keys were left with me, and I still have them. I never authorized any one to break into the trunk or take anything therefrom." We suppose these acts were for the purpose of taking away the jurisdiction of the Taylor circuit court to administer upon the estate.

But, returning to the question of domicile, we think it is very clear that the home of the deceased at the time of his death was in Taylor county. The place where a person lives and dies is taken to be his domicile until facts adduced establish the contrary. What facts have appellees shown to rebut the presumption that the only home the deceased had was in Taylor county? They prove nothing. They concede that he had left Woodhull, intending to abandon it as a home. It is true, as claimed by appellees, that a domicile once acquired is presumed to continue until it is shown to have been changed. But the same evidence which shows a domicile in Illinois shows that it was abandoned. And the deceased, when he made his will and died, was not in transit to another home. He had gone home to his mother to remain an indefinite time. He had all his worldly possessions with him or in transit there, except the few articles left at Woodhull. It is true, as argued by appellees, that no person can have two domiciles—that the old domicile continues until the new one is acquired. But in this case the evidence shows that the deceased intended to change his domicile, and that he actually went to Taylor county to what he regarded as his home. It was his fixed place of residence for an indefinite time at least, with no intention of returning to his former home.

It appears from a motion in the case that the clerk of the circuit court made certain corrections in the record after the appeal was taken. It is unnecessary to determine the motion, or make further reference to it than to say that, if the

record be taken as appellees claim it should be, our conclusion upon the evidence would not be different.

REVERSED.