Lindemuth, Respondent, vs. Philipp, Governor, and others, Appellants.

*March 12—April 5, 1921.*

*Soldiers' bonus law: Resident registering in another state.*

Under the Soldiers' Bonus Law (ch. 667, Laws 1919), granting a bonus to "each soldier, sailor, marine, and nurse . . . who at the time of his or her induction into the service was a resident of Wisconsin," a resident of this state registering in Michigan pursuant to a letter received from a Michigan registration board and there inducted into the service is entitled to the bonus.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Affirmed.*

This is an action of *mandamus* brought by plaintiff, a soldier in the world war, to compel the defendants, constituting the Service Recognition Board, to issue to plaintiff a certificate of disbursement drawn upon the treasurer of the state of Wisconsin in the sum of $121.33, under the provisions of the so-called Soldiers' Bonus Law (ch. 667, Laws 1919). From a judgment of the circuit court awarding a peremptory writ of *mandamus* defendants bring this appeal.

For the appellants there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

For the respondent there was a brief by *Pickering & Rieser* of Superior, and oral argument by *R. M. Rieser.*

OWEN, J. Plaintiff was inducted into the military service of the United States on the 15th day of July, 1918, at Gaylord, Michigan, where he resided with his parents prior to the month of April, 1916. He was unmarried. His business was that of a locomotive fireman, and during the month of April, 1916, he went to Superior seeking employment. He found employment, took up his residence at Superior, has continued to reside there ever since, and has exercised all the rights of citizenship, having voted at the municipal election in that city in the spring of 1918. He registered under the United States selective service act June 5, 1917, at Gaylord, Michigan. He did this pursuant to a letter which he received from the registration board at that place. He supposed that was the proper place for him to register. He claims he is entitled to the so-called bonus provided by ch. 667, Laws 1919. The benefits provided by the act are made payable to each "soldier, sailor, marine, and nurse, including Red Cross nurses, who served in the armed forces of the United States during the war against Germany and Austria, and who at the time of his or her induction into the service was a resident of Wisconsin." The defendants, constituting the Service Recognition Board

created by said act, deny his right thereto because they claim he was not a resident of the state of Wisconsin, within the meaning of that act, at the time of his induction into service. They claim that the residence contemplated by the act is a military residence, and that such residence was definitely and irrevocably fixed at Gaylord, Michigan, by the applicant himself when he there registered under the selective service act.

Did the legislature have in mind a distinction between a military and an ordinary actual residence? If so, was it intended that applicants for the benefits of the act should respond to the test of a military rather than an actual residence? Obviously, this distinction could not have been in mind so far as nurses are concerned, for it will not be contended that they had a military residence. As to them, the law evidently means just what it says. Every nurse who had an actual residence in the state when inducted into service, every Red Cross nurse who had an actual residence in the state when she became a part of the Red Cross organization, became entitled to the benefits of the act. As to that we apprehend there is no dispute. Now if a different test is to be applied to soldiers, sailors, and marines, should it not be so declared, or at least intimated, in and by the terms of the act? There is not a single word in the act to suggest that such a distinction was in the legislative mind. The residence of the soldier, the sailor, and the marine is to be tested in exactly the same way that the residence of the nurse is tested. If the legislature did have such a distinction in mind, is it too much to assume that it would have been pretty clearly indicated in the act itself? If it intended one kind of residence for a nurse and another for a soldier; would it have trusted to a different construction of identical language to reveal such intent? We are not disposed to impute to the legislature such hazardous and uncertain manner of expression. If in drafting this act the legislature intended the residence of the soldier to be fixed as of the time and by the act of registration, it very effectually obscured

such purpose by the use of the language "who at the time of his or her *induction into the service* was a resident of Wisconsin." These words indicate an appreciation on the part of the legislature that the question of residence must be referable to some definite time. It could have fixed it as of the time of registration and provided that the place of registration should be conclusive upon the question of residence for the purposes of the act. On the contrary, it is plainly declared that to be entitled to the benefits of the act the applicant must have been a resident of the state "at the time of his or her induction into the service." The time of registration and the time of induction into service were by no means coincident. There was ample time between the two events to enable one to acquire or abandon a residence in the state. No doubt the legislature had this in mind and deliberately bestowed the state's appreciation upon those who had recently acquired rather than those who had recently abandoned their residence here. In this there was manifest propriety and justice. This token of appreciation was based on the sentiment that those who occupied the status of citizens or residents of the state had special claims upon its gratitude. The legislature had to choose between those who had come into the state and those who had left the state during the interim between registration and induction into service. If the fact of residence was determined as of the date of registration, those who had left the state before induction into service and between whom and the state the reciprocal duties and privileges of citizenship no longer existed would be the beneficiaries of the act, while those who took up their residence in the state during such period, most of whom, at least, were citizens of the state at the time of the passage of the act and would be required to contribute to the fund, would be denied the benefits thereof. The legislature was required to choose between those two classes—between its present and its past citizens. In according the preference to its present citizens, those who, as a class, will be subjected to a portion of the

burden imposed as well as the benefits provided by the act, a measure of justice and propriety would seem apparent.

We feel that we have said much to demonstrate the obvious. The sole question is whether the residence of the applicant is to be determined as of the date of registration or induction into service. The act plainly says the latter. In view of the fact that the date of registration could have been as easily declared, if such had been the legislative intent, we see no reason or excuse for ascribing to the language other than its usual and ordinary meaning. The peremptory writ of *mandamus* was properly granted.

*By the Court.*—Judgment affirmed.