# IN THE SUPREME COURT OF IOWA

No. 49 / 05-0980

Filed June 9, 2006

**IN THE MATTER OF S.P.,
Alleged to Be a Chronic
Substance Abuser,**

**S.P.,**

    Appellant.

_____

    Appeal from the Iowa District Court for Dubuque County, Lawrence Fautsch, Judge.


    Person subject to commitment order appeals, claiming her procedural due process rights were violated. **REVERSED.**


    Stuart G. Hoover of Blair & Fitzsimmons, P.C., Dubuque, for appellant.

**STREIT, Justice.**

Even though the court interceded with an effort at finding the truth, it improperly adopted an adversarial role in the proceedings. S.P. appeals from the district court order finding she was a chronic substance abuser and placing her in a residential treatment facility. She contends her due process rights were violated because the referee and district court judge took adversarial roles in the proceedings, and because the district court ordered her attorney to subpoena witnesses adverse to her interests. She also claims the court erred in finding she met the statutory definition of a chronic substance abuser. Because we find the district court assumed an adversarial role in the proceeding, we reverse the decision of the district court and do not address S.P.'s other arguments.

## I.  Background Facts and Proceedings

S.P. is a forty-five year old female with serious health problems. She has had one heart attack and suffers from coronary artery disease, hypertension, diabetes, and obesity. She also suffers from severe respiratory problems that make her dependent on oxygen. On March 15, 2005, her brother and sister-in-law (hereinafter "applicants") filed an application under Iowa Code section 125.75 (2005) alleging S.P. was a chronic substance abuser who needed to be taken into immediate custody for her cocaine addiction. A substance abuse commitment hearing was held before a hospitalization referee on March 18, 2005. The applicants were not represented by counsel at the hearing, and no member of the Dubuque County Attorney's office attended the hearing. The referee questioned the two applicants and the examining physician. S.P.'s attorney cross-examined each witness. S.P. also testified, but was not cross-examined by the referee. At the end of testimony, the

hospitalization referee found that S.P. met the criteria for chronic substance abuse with a crack cocaine addiction. The referee ordered that she reside at the Julien Care Facility for complete evaluation and appropriate treatment.

S.P. appealed the referee's decision to the district court. At the district court hearing, S.P. demanded a "trial de novo" pursuant to Iowa Code section 229.21(3)(*c*), instead of a review based upon the transcripts of the referee's hearing.[1] The district court judge ordered that a new hearing be scheduled so that the witnesses could be re-examined.

At the start of the second hearing, S.P.'s attorney objected and made a motion to dismiss based on the fact that there was no one to "prosecute" the case. The judge denied this motion. The district court judge proceeded to question the two applicants and, via telephone, the examining physician who had testified at the hearing before the hospitalization referee. S.P.'s attorney cross-examined each witness. S.P. also testified, but was not cross-examined by the judge. On May 10, 2005, the court issued an order affirming the ruling of the hospitalization referee.

---

[1]An order of a magistrate or judicial hospitalization referee finding that a person is a chronic substance abuser may be appealed to the district court. Iowa Code § 229.21. "When appealed, the matter shall stand for trial de novo," and the court shall schedule the hearing before a district judge at the earliest practicable time. *Id.* § 229.21(3)(*c*).

There are significant differences between a "trial de novo" and a "de novo review." *See In re Huston*, 263 N.W.2d 697, 699 (Iowa 1978). Generally, in a "de novo review" proceeding, the reviewing court is restricted to the record made in the lower tribunal. *Sieg v. Civil Serv. Comm'n*, 342 N.W.2d 824, 828 (Iowa 1983); *Mason v. World War II Serv. Comp. Bd.*, 243 Iowa 341, 344, 51 N.W.2d 432, 434 (1952). On the other hand, "in a trial de novo, the court hearing the case anew is permitted to receive evidence additional to that presented" in the earlier hearing. *Dolan v. Civil Serv. Comm'n*, 634 N.W.2d 657, 662 (Iowa 2001); *Mason*, 243 Iowa at 344-45, 51 N.W.2d at 434. Therefore, a statute providing for a "trial de novo" in the district court contemplates a trial in the general meaning of the term, not merely a review of the agency proceeding. *Dolan*, 634 N.W.2d at 662.

S.P. appeals, contending her right to due process was violated because the referee and district court judge became the applicants' attorneys and presented evidence in their stead. No person or party has filed a brief opposing this appeal.

In June of 2005, S.P.'s commitment was changed from inpatient to outpatient status. S.P. soon suffered a relapse, and a new hearing was held before a hospitalization referee on July 11, 2005. Once again, a referee concluded S.P. was a chronic substance abuser and ordered her back to inpatient status. This appeal concerns only the May 10, 2005 initial commitment order.

## II. Mootness

An appeal " 'is moot if it no longer presents a justiciable controversy because [the contested issue] has become academic or nonexistent.' " *In re D.C.V.*, 569 N.W.2d 489, 494 (Iowa 1997) (quoting *In re Meek*, 236 N.W.2d 284, 288 (Iowa 1975)). We do not decide cases when there is no longer any actual controversy, unless we exercise our discretion and decide the case under an exception to the mootness doctrine. *Rhiner v. State*, 703 N.W.2d 174, 176-77 (Iowa 2005). The factors we consider to determine whether we will review a moot action are:

> (1) the private or public nature of the issue; (2) the desirability of an authoritative adjudication to guide public officials in their future conduct; (3) the likelihood of the recurrence of the issue; and (4) the likelihood the issue will recur yet evade appellate review.

*In re T.S.*, 705 N.W.2d 498, 502 (Iowa 2005) (citing *State v. Hernandez-Lopez*, 639 N.W.2d 226, 234 (Iowa 2002)).

The conduct of the court in an involuntary civil commitment hearing is of public importance. Because such hearings are a daily

occurrence, questions about the proper procedures to be followed when the applicant is not represented by counsel are likely to reoccur. Also, given the time elements involved in processing an appeal, and the strong probability that the commitment will not continue for the length of the appeal process, such appeals will often be moot before the appeal can be decided. *In re M.T.*, 625 N.W.2d 702, 705 (Iowa 2001); *see also Tyars v. Finner*, 709 F.2d 1274, 1280 (9th Cir. 1983) (holding court would review case despite appellant's discharge from hospital because involuntary civil commitments " 'do not last long enough for complete judicial review of the controversies they engender' " (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 126, 94 S. Ct. 1694, 1700, 40 L. Ed. 2d 1, 10 (1974))). Therefore, we exercise our discretion to reach the merits of one issue raised in this appeal.

### III. Merits

### A. Standard of Review

A civil commitment requires due process because it constitutes a significant deprivation of personal liberty. *In re M.T.*, 625 N.W.2d at 706 (citing *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 1809, 60 L. Ed. 2d 323, 330-31 (1979)). We review constitutional claims de novo. *In re Cubbage*, 671 N.W.2d 442, 444 (Iowa 2003).

### B. Procedural Process in a Civil Commitment Hearing

Chapter 125 of the Iowa Code addresses the issue of chemical substance abuse. Under our statutory scheme, any interested person may commence commitment proceedings by filing an application for the involuntary commitment or treatment of an alleged chronic substance abuser. Iowa Code § 125.75. Upon the filing of the application, the clerk of court dockets the case and immediately notifies a district court judge, a district associate judge, or magistrate who is admitted to the practice of

law. *Id.* § 125.77. The court then schedules a hearing not less than forty-eight hours after notice of the application is served upon the respondent. *Id.* § 125.78(3)(*a*). If the applicant requests a court-appointed attorney, the court is required to appoint one at the county's expense so long as it determines the applicant is financially unable to employ an attorney and a court-appointed attorney "is necessary to assist the applicant in a meaningful presentation of the evidence." *Id.* § 125.78(2).

Section 125.82(4) sets forth the procedures for the commitment hearing:

> The respondent's welfare is paramount, and the hearing shall be tried as a civil matter and conducted in as informal a manner as is consistent with orderly procedure. Discovery as permitted under the Iowa rules of civil procedure is available to the respondent. The court shall receive all relevant and material evidence, but the court is not bound by the rules of evidence. *A presumption in favor of the respondent exists, and the burden of evidence and support of the contentions made in the application shall be upon the person who filed the application.* If upon completion of the hearing the court finds that the contention that the respondent is a chronic substance abuser has not been sustained by clear and convincing evidence, the court shall deny the application and terminate the proceeding.

(Emphasis added.)

In order to commit someone as a chronic substance abuser, the referee or district court has to find by clear and convincing evidence that the person:

> a. Habitually lacks self control as to the use of chemical substances to the extent that the person is likely to seriously endanger the person's health, or to physically injure the person's self or others, if allowed to remain at liberty without treatment.

b. Lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment.

*Id.* § 125.2(4).

In the present case, the applicants completed a fill-in-the-blank application form alleging chronic substance abuse. The applicants signed the application and attached statements and affidavits corroborating their allegations.

Upon reviewing the application, the district court judge issued an order that S.P. be taken into immediate custody. The judge also appointed counsel for S.P., ordered a physician to examine her, and set the date and time for a commitment hearing before a hospitalization referee.

The applicants did not hire an attorney to assist them at the hearing.[2] Likewise, the Dubuque County Attorney's office did not participate in either hearing and did not present evidence on behalf of the applicants. Not surprisingly, the co-applicants did not take an active role at the hearing. They simply stood silent as the referee took charge of the proceeding.

## C. Were S.P.'s Procedural Due Process Rights Violated?

S.P. contends her right to due process was violated because the district court judge took on an adversarial role when questioning the witnesses, in effect becoming the applicants' attorney and presenting evidence in their stead. She argues her due process rights were violated

---

[2]The application form filled out by the applicants did not contain a box requesting that the court appoint an attorney for the applicants. *See* Iowa Code § 125.78(2) (outlining procedures whereby an applicant can request the court to appoint an attorney, at the county's expense, for the applicant).

because the nature and extent of the court's questions rose to the level of advocacy.[3]

The issue of a referee taking on an adversarial role during an involuntary commitment hearing was brought before this court in *In re R.P.*, 606 N.W.2d 15 (Iowa 2000). In *R.P.*, the applicant was not represented by counsel and the trier of fact examined the witnesses on the applicant's behalf. 606 N.W.2d at 15-16. Similar to the case at hand, the respondent appealed the referee's civil commitment finding to this court, claiming he was denied due process because the referee took on an adversarial role by questioning the witnesses. *Id.* at 16. We disagreed, finding the respondent was not denied due process because "the referee did not display any evidence of becoming an advocate by such actions as extensive questioning, leading of the witness, or cross-examination of the respondent." *Id.* at 17.

The record in the present case simply does not display what Edmund Burke described as "the cold neutrality of an impartial judge." *See State v. Glanton*, 231 N.W.2d 31, 35 (Iowa 1975). Instead, we have a district court judge trying to elicit testimony that will support the applicants' burden of proof. While we empathize with the court's strong desire to aid the unrepresented applicants and do what is best for S.P., it is, as we stated in *State v. Glanton*, "ordinarily a dangerous practice for a presiding judge to contribute his efforts in an attempt to equalize what he perceives to be disparity in the trial ability of opposing counsel." *Id.* Even though the court did not become a cheerleader or partisan for the applicants, the court assumed an adversarial role in the process by

---

[3]Because the district court held a trial de novo in this case, we focus our attention solely on the *district court* proceeding.

picking and choosing which evidence would come in on behalf of the applicants.[4] In the process of searching for such evidence, the court marshaled the evidence towards the definition of a chronic substance abuser. This focused questioning changed the court's role from an impartial decision-maker to an advocate.

We hold today that an analysis based solely upon the nature of the questions asked by the referee or district court judge is not wholly determinative of the issue of advocacy. We cannot provide the trial court a cookbook of right or wrong questions, but merely observe that any effective questioning will inevitably lead to the heart of the case. When the court itself directs the case in this way it is marshaling or assembling the evidence. Artfully crafted questions will not hide the court's role in the proceedings at that point—the role of deciding what evidence is needed to prove the case and steering the case down that road.

*R.P.* exemplified the rare situation where witnesses, answering a few open-ended questions with narrative testimony, were able to articulate enough clear and convincing evidence to convince the court that a civil commitment was necessary. But in many cases the applicant's narrative testimony, along with the unguided narrative testimony of the examining physician, will be insufficient for a civil commitment. In those situations the court is prohibited from assuming the role of an advocate. As noted above, when the court takes an active role by examining witnesses on the applicant's behalf, it begins to take on the attributes of an advocate. Therefore, when faced with pro se

---

[4]The authority of a judge to question witnesses is well established. *See, e.g.,* Fed. R. Evid. 614(*b*); Iowa R. Evid. 5.614(*b*). "The authority is, of course, abused when the judge abandons his proper role and assumes that of advocate." Fed. R. Evid. 614 advisory committee's note to subdivision b.

applicants in a civil commitment proceeding, the referee or district court is advised to either appoint an attorney at the county's expense under the guidelines of Iowa Code section 125.78(2) or warn the applicant at the outset that the applicant will have to prove his or her case without assistance from the court.[5]

## IV. Disposition

The trial court tried to do what was best for the health and well-being of S.P. However, S.P. was denied due process when the court became an advocate for the applicants. Although we reverse, we do not remand for a new hearing since S.P. is no longer subject to the May 10, 2005 inpatient order. Any subsequent substance abuse commitment orders pertaining to S.P. remain unchanged by this decision.

**REVERSED.**

---

[5]Of course, a third option would be for the county attorney to join in the application as a co-applicant. *See In re T.S.*, 705 N.W.2d at 504. Also, as of July 1, 2006, Iowa Code section 125.82 has been modified to provide "evidence in support of the application may be presented by the applicant, or by an attorney for the applicant, or *by the county attorney.*" 2006 Iowa Legis. Serv. S.F. 2362 (West) (emphasis added).