400 N.W.2d 544 (1987)
In the Matter of T.C.F., Alleged to be Seriously Mentally Impaired, Appellant.
No. 85-797.
Supreme Court of Iowa.
February 18, 1987.
Rehearing Denied March 13, 1987.
*545 T.C.F., Davenport, pro se, and John G. Mullen, Davenport, for appellant.
Thomas J. Miller, Atty. Gen., Valencia Voyd McCown, Asst. Atty. Gen., and William E. Davis, Co. Atty., for appellee.
Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.
LARSON, Justice.
Proceedings for the involuntary hospitalization of the respondent, T.C.F., began on April 22, 1985, when his sister filed an application under Iowa Code section 229.6 (1985). On the same date, the district court found probable cause to believe the respondent was seriously mentally impaired and likely to injure himself or others if allowed to remain at liberty. See Iowa Code § 229.11. It ordered that the respondent be immediately confined in a local hospital until the hearing on the application, which was set for April 24.
The preliminary physician's examination under section 229.10 was performed. The examining doctor concluded that the respondent suffered from a mental illness called "bipolar affective disorder manic," that he was incapable of making responsible decisions with respect to his treatment, and that he was likely to cause emotional harm to others. The report also noted a 1982 proceeding for the involuntary hospitalization of the respondent.
On May 14 and 15, 1985, a hearing was held on the application. The court ordered hospitalization of the respondent for evaluation and treatment pursuant to Iowa Code section 229.13, and the respondent appealed. We affirm.
Any order for involuntary hospitalization must be based on a finding of "serious mental impairment." Iowa Code § 229.13. "Serious mental impairment," in turn, is based on a finding of "mental illness." Chapter 229 (1985) provides the definitions of these terms:
"Mental illness" means every type of mental disease or mental disorder, except *546 that it does not refer to mental retardation as defined in section 222.2, subsection 5, or to insanity, diminished responsibility, or mental incompetency as the terms are defined and used in the Iowa criminal code or in the rules of criminal procedure, Iowa court rules, 2d ed.

"Seriously mentally impaired" or "serious mental impairment" describes the condition of a person who is afflicted with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment....
Iowa Code §§ 229.1(1), (2).
A proceeding for involuntary hospitalization begins with an application by "any interested person." Iowa Code § 229.6. The court, upon the filing of the application, must set a hearing on the application "at the earliest practicable time not less than forty-eight hours after notice to the respondent," unless waived by the respondent. Iowa Code § 229.8(3)(a).
If the application and accompanying documents show probable cause to believe the respondent is seriously mentally impaired and is likely to injure the respondent or others, the court may enter an order for immediate custody. Iowa Code § 229.11.
A physician's examination must be performed within a "reasonable time" unless the respondent is held under a temporary order for confinement, in which case the examination is required to be performed within certain specified times. When that confinement is in a hospital, as was the case here, the physician's examination must be performed within twenty-four hours of the court's order. Iowa Code § 229.10.
At the hearing on the application, the county attorney is to present the evidence supporting the application. Iowa Code § 229.12(1) (1985). If the court finds the respondent to be seriously mentally impaired, it must order the respondent placed in a hospital or "other suitable facility" for psychiatric evaluation and treatment. Iowa Code § 229.13.
The chief medical officer of a hospital or other facility must provide an evaluation within fifteen days of admission and make a recommendation for final disposition. Iowa Code §§ 229.13 and .14 (1985). Alternatives for care include (a) release from hospitalization and termination of the proceedings; (b) full-time care and treatment; (c) treatment as an outpatient or on another "appropriate basis"; or (d) an alternative placement. Iowa Code § 229.14.
At the hearing in the present case, two psychiatrists testified. Dr. D.V. Domingo, who was appointed by the court to examine the respondent pursuant to Iowa Code section 229.10, reaffirmed the diagnosis of the respondent and testified that he was a danger to himself and others at the time the application for hospitalization was filed. He could not give an opinion as to whether he remained such a threat at the time of the hearing. The second doctor concurred in the diagnosis and expressed the view that the respondent was a danger to himself and others.
The court received evidence of the respondent's erratic behavior and of his physical and emotional abuse of family members. According to the doctors, such acts were manifestations of his diagnosed condition.
The court concluded that clear and convincing evidence established the elements necessary to prove serious mental impairment. It also found that the respondent's attempts at self-treatment had been ineffective and concluded that it was necessary for him to be hospitalized for evaluation and treatment. A separate order to that effect was filed on the same day, May 17, 1985. See Iowa Code § 229.13.
In his appeal, the respondent raises several issues which may be summarized as follows: (1) that the record did not support the court's findings; (2) that the court failed to follow the procedural mandates of chapter 229, thus depriving him of due process; (3) that the involuntary commitment statute is unconstitutional; and (4) that the court erred in admitting certain *547 medical evidence over the respondent's confidentiality and privilege objections.

I. Sufficiency of the Evidence.

The elements of serious mental impairment, defined above, must be established by clear and convincing evidence. Matter of Oseing, 296 N.W.2d 797, 799 (Iowa 1980). The district court's findings of fact on this issue are binding on this court if supported by substantial evidence. Id. at 800-01.
We believe the record shows adequate support for all of the required elements. The medical diagnosis was well established, as were the acts of alleged violence toward the respondent's family members. While the respondent offered various excuses for these actions, he does not deny their occurrence. There was also substantial evidence that the respondent was unable to deal with his problem without the intervention of a chapter 229 proceeding and that he was a danger to himself and others.

II. Due Process in the Proceeding.

The respondent complains that the court failed to provide a timely physical examination and a timely hearing on his application to introduce evidence challenging the order for temporary confinement. The respondent was taken into custody on April 22, 1985. A court order was signed immediately after the filing of the application appointing Dr. Steven Chang to conduct the physical examination. Dr. Chang, however, declined on the ground he had been the respondent's private physician. The State then arranged, on the second day of the respondent's hospitalization, for an evaluation by another psychiatrist. At that point, however, the respondent decided to proceed on a voluntary basis, making the examination under section 229.10 unnecessary. As a result, the involuntary hospitalization proceedings were temporarily stalled. Later, the respondent again changed his mind and decided that he no longer wished to be a voluntary patient.
The State argues that good cause was shown for the delay in the examination, that the delay was caused by the problem with the respondent's treating doctor and by his own decision about whether he would be treated on a voluntary basis. We agree; the examination was timely under the circumstances.
The respondent also complains that he was not afforded a timely hearing on his application to produce evidence challenging his temporary confinement. In such a case, the respondent must be given an opportunity after the order for temporary detention is filed to introduce evidence challenging that order. Rule 11 of Iowa Rules for Involuntary Hospitalization of Mentally Ill provides:
If the respondent's attorney is afforded no opportunity to present evidence and argument prior to the determination under [Iowa Code] section 229.11 [that the respondent should be taken into immediate custody], ... the attorney shall be entitled to do so after the determination during the course of respondent's confinement pursuant to an order issued under that section.
In this case, the respondent filed an application to present such evidence on April 29, 1985, and the hearing on it was held on May 1. The basis for the respondent's argument of untimeliness is not clear. We believe that a hearing was timely under the rule.
The respondent also complains that the court did not order his confinement in a "less restrictive setting." Iowa Code section 229.11 provides that a respondent may be placed in the custody of a relative, friend or other suitable person willing to accept the responsibility. The court in this case made an express finding that less restrictive alternatives were not adequate, and we believe the record supports that finding.

III. Constitutionality of Chapter 229.

The respondent attacks chapter 229 on constitutional grounds in several respects:
*548 (1) that it fails to take into consideration less restrictive alternatives prior to ordering full-time hospitalization; (2) that the statute's definition of mental illness is impermissibly vague; and (3) that it is unconstitutional because it does not require proof beyond a reasonable doubt.
The respondent's argument that chapter 229 is unconstitutional on vagueness grounds and on the ground that it fails to require less restrictive alternatives is based on his reading of Stamus v. Leonhardt, 414 F.Supp. 439 (S.D.Iowa 1976), a case which held the predecessor to present chapter 229 to be unconstitutional on those grounds.
The commitment statute under attack in Stamus, however, was significantly different from the present law. Under section 229.11, the court is now required to consider less restrictive alternatives when addressing the question of prehearing determinations. Once an order for hospitalization is entered under section 229.13, the chief medical officer of the hospital or facility to which a respondent has been committed is to consider other alternatives to confinement. Iowa Code § 229.14. The respondent appears to argue, however, that consideration of less restrictive alternatives must be investigated before the hospitalization order is entered. One of the primary purposes of the order for hospitalization, however, is to evaluate the respondent. It is on the basis of this evaluation that other alternatives are to be assessed. Id.; Oseing, 296 N.W.2d at 799.
We do not believe the statute runs afoul of the Stamus holding on the basis it fails to consider less restrictive alternatives.
The respondent also argues that the statutory definition of mental illness is so vague that it renders the involuntary hospitalization law unconstitutional, again relying on Stamus. It should be noted that the diagnosis of mental illness must be made by a licensed physician. This is in marked contrast to the practice under the law in effect at the time of Stamus, which permitted "each commission member [to] determine subjectively, on an ad hoc basis, whether a person was `mentally ill'...." Stamus, 414 F.Supp. at 452.
We believe the term "mental illness" as defined in section 229.1(1) and interpreted by a licensed physician is not impermissibly vague. The evidence showed that there are specific criteria furnished by the American Medical Association, for use in diagnosing manic-depressive disorders, and that those criteria were met in this case.
The respondent further argues that the hospitalization statute is unconstitutional because it does not require proof beyond a reasonable doubt. The statute merely requires clear and convincing evidence to sustain the application. Iowa Code § 229.12(3). This argument has been expressly rejected by the Supreme Court, Addington v. Texas, 441 U.S. 418, 430-32, 99 S.Ct. 1804, 1811-12, 60 L.Ed.2d 323, 334-35 (1979), and we reject the argument for the same reasons.

IV. The Medical Evidence Issues.

The respondent contends that evidence considered by the examining doctor and by the court at the time of the final hearing violated our statutes on confidentiality and the doctor-patient privilege found in Iowa Code sections 229.24 and 622.10, respectively. The report of Dr. Domingo stated in part that, "[a]s for background history, I would depend on the court records of May, 1982." The "records" referred to by the doctor were of a prior involuntary hospitalization proceeding, and the respondent contends that the doctor's use of them violated the statutory confidentiality accorded to them. Iowa Code section 229.24 provides:
All papers and records pertaining to any involuntary hospitalization or application for involuntary hospitalization of any person under this chapter ... are subject to inspection only upon an order of the court for good cause shown.
At the time Dr. Domingo made his report for the court, which was on May 8, 1985, there was no court order expressly authorizing release of the 1982 hospitalization proceedings. That order was entered *549 on May 9, the day after the doctor had used them. There was, however, a general order entered on May 7 directing Dr. Chang, the respondent's treating doctor, to turn over his records pertaining to the respondent for the use of Dr. Domingo. It appears that Dr. Chang was actually the source of the information concerning the 1982 proceeding. If so, Dr. Domingo's use of them was proper, because the court order of May 7 authorized their release.
Even assuming Dr. Domingo's access to evidence of the 1982 proceeding was improper under section 229.24, we do not believe the appropriate remedy would be to exclude any use of it, as suggested by the respondent. Because the paramount concern in these proceedings is the welfare of the respondent, Iowa Code § 229.12(3), and because information from the prior proceeding was necessary for an accurate diagnosis, its exclusion from consideration by Dr. Domingo would be counterproductive. We conclude it was not error to include evidence of the 1982 proceeding in the report of Dr. Domingo.
As to the State's reference to the 1982 proceeding at the hearing itself, there is another basis for its admission: The respondent referred to a part of these proceedings in presenting his own case and, as a result, waived any objection. As the district court pointed out, he could not use a portion of the 1982 record and withhold the rest.
In a related argument, the respondent complains that Dr. Domingo's use of these records ran afoul of the doctor-patient privilege of Iowa Code section 622.10. The district court held that the doctor-patient privilege did not preclude the use of this evidence because involuntary hospitalization proceedings are not bound by rules of evidence. See Iowa Code § 229.12 ("The court shall receive all relevant and material evidence which may be offered and need not be bound by the rules of evidence."). On appeal, the State relies on this rationale, as well as a waiver by the respondent to support the court's ruling. The State also contends that the privilege statute, § 622.10, is inapplicable by its terms.
We believe there is merit in the waiver argument. The respondent introduced portions of Dr. Chang's records at the hearing and therefore lost any basis for objection to the State's use of it.
Moreover, we believe that the privilege statute, § 622.10, is inapplicable. This section provides in part that:
The prohibition [against disclosure of doctor-patient communications] does not apply to cases where the person in whose favor the prohibition is made waives the rights conferred; nor does the prohibition apply to physicians or surgeons, physician's assistants, mental health professionals, or to the stenographer or confidential clerk of any physicians or surgeons, physician's assistants, or mental health professionals, in a civil action in which the condition of the person in whose favor the prohibition is made is an element or factor of the claim or defense of the person or of any party claiming through or under the person. The evidence is admissible upon trial of the action only as it relates to the condition alleged.
(Emphasis added.)
Is a chapter 229 proceeding a "civil action in which the condition of the person... is an element or factor of the claim or defense of the person" under section 622.10? If so, the doctor-patient privilege is inapplicable. Prior to 1982, it was clear that a hospitalization proceeding was not excluded from the privilege; civil actions were excluded only if they sought "to recover damages for personal injuries or wrongful death" in which the physical condition was a factor. See Iowa Code § 622.10 (1981). That section was amended in 1982 to remove the requirement that the action be one for damages. See 1982 Iowa Acts ch. 1242, § 1.
An "action," it is said,
includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication *550 upon the right and its enforcement or denial by the court.
Black's Law Dictionary 26 (5th ed. 1979). We believe a hospitalization proceeding, which involves an application, notice, hearing, and a final adjudicative order by the court, must be considered to be an action under section 622.10. It is, in fact, difficult to conceive of any type of case in which the condition of the person asserting the privilege is any more at the heart of the controversy than in a proposed involuntary hospitalization. We hold the doctor-patient privilege of section 622.10, therefore, is inapplicable.
We have addressed all of the arguments raised by the respondent and find no basis for reversal. We therefore affirm the order for hospitalization.
AFFIRMED.