# IN THE COURT OF APPEALS OF IOWA

No. 14-1319
Filed July 9, 2015

**SHAHNAZ LOTFIPOUR and**
**KHOSROW LOTFIPOUR,**
  Plaintiffs-Appellees,

**vs.**

**PR PARTYLINES, LLC,**
  Defendant-Appellant.
_____

  Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt,

Judge.


  The defendant in a personal injury lawsuit challenges the district court's

order of a continuance not requested by either party.  **REVERSED AND**

**REMANDED WITH DIRECTIONS.**


  Randy J. Wilharber and Joseph M. Barron of Peddicord, Wharton,

Spencer, Hook, Barron & Wegman, L.L.P., West Des Moines, for appellant.

  Fred L. Dorr of Wasker, Dorr, Wimmer & Marcouiller, P.C., West Des

Moines, for appellees.


  Heard by Tabor, P.J., McDonald, J., and Miller, S.J.*

  *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**TABOR, P.J.**

This interlocutory appeal concerns a continuance ordered by the district court on the day of trial. The defendant, PR PartyLines, LLC, contends the court abused its discretion by continuing the trial without a motion from either party and with the express purpose of enabling the personal injury plaintiffs to find an expert on causation. PR argues the proper remedy is to remand the case and freeze the evidence as it existed on the trial date of August 4, 2014, with enforcement of deadlines relating to the presentation of expert witnesses.

Plaintiffs Shahnaz and Khosrow Lotfipour, who were passengers in a PR minibus, maintain they do not need an expert on causation but argue that, on remand, the evidence should be frozen for both sides. Specifically, the Lotfipours assert PR should be prohibited from seeking an expert if the district court allows them to pursue a "common carrier" theory.

Because the sua sponte continuance did not achieve substantial justice for the parties, we reverse and remand for the proceedings to resume where they left off. We direct the district court to enforce all existing deadlines for the presentation of the Lotfipours' evidence, including expert witnesses. Because the district court has not ruled on the availability of a "common carrier" theory, we take no position as to potential witnesses on that issue.

I.    **Background Facts and Proceedings**

Wedding guests Shahnaz and Khosrow Lotfipour were returning to their hotel from a rehearsal dinner at the home of Bill and Susan Knapp on the night of May 20, 2010, when the minibus in which they were riding struck a deer on

Interstate 35. The Knapps hired PR to provide transportation for out-of-town guests attending various functions associated with their daughter's wedding. The PR minibus, traveling at approximately sixty miles per hour, was not equipped with seatbelts. The collision threw the Lotfipours from their seats to the floor; Khosrow landed on top of his wife, Shahnaz. The minibus driver called 911 and emergency medical technicians responded to the scene. Khosrow injured his elbow, shoulder, and neck. Shahnaz suffered cervical spine fractures. They received treatment at Des Moines Mercy Hospital the night of the crash and follow-up care upon returning home to California.

On April 25, 2012, the Lotfipours filed a petition alleging that PR's negligence on the night of the collision caused their injuries. The initial trial date was December 13, 2013. The district court continued trial until August 4, 2014, at the request of the Lotfipours' counsel.

On April 24, 2013, PR filed a motion for summary judgment, asserting PR's driver was not negligent in operating the minibus because the collision with the deer fell under the "sudden emergency" doctrine. The motion also contended PR did not maintain an unsafe vehicle because it complied with all state and federal safety regulations. The Lotfipours resisted the motion for summary judgment, arguing a jury should consider the "sudden emergency" doctrine, as well as other issues of material fact.

In a September 3, 2013 ruling, the district court granted PR's motion for summary judgment on the Lotfipours' claims that PR should not have been operating the minibus on an interstate highway without safety devices. The court

recognized those devices were not mandated by law. The court denied PR's motion for summary judgment on the Lotfipours' claim the minibus driver was negligent in failing to keep a proper lookout.

On July 24, 2014, the Lotfipours filed their list of witnesses to be called at trial; the list included the two plaintiffs themselves and minibus driver Catherine Burch.[1] The Lotfipours also filed a list of exhibits they intended to offer at trial, including medical bills and invoices for their care following the collision.[2] On the same date, the Lotfipours filed a trial brief, asserting two issues: (1) PR was a "common carrier" and therefore owed a higher degree of care to its passengers, and (2) PR's operation of the minibus on the night in question was negligent.

PR filed a motion in limine on July 28, 2014. Among other evidence, PR sought to exclude "undisclosed expert opinions and related testimony." The motion noted the Lotfipours had designated two treating physicians as expert witnesses but had failed to disclose their opinions at least thirty days before trial, as required by Iowa Rule of Civil Procedure 1.508(3). PR's motion urged: "Any attempt to interject evidence of this nature at trial should be prohibited by the Court."

PR's limine motion also attacked their trial brief's classification of the minibus service as a "common carrier." PR accused the Lotfipours of "switching their claims at the '11th hour' in an effort to impose a greater degree of care" and accused them of adopting an "ambush tactic" in reaction to the district court's

---

[1] The Lotfipours amended their witness list four days later to include Peter and Angie Cooper, the owners of PR.
[2] The medical-bill exhibits included a subrogation claim indicating a total lien amount of $28,331.65 for Shahnaz and $9602.37 for Khosrow.

partial grant of summary judgment. PR asked the court to reject the new allegation and require the Lotfipours to "present their case in conformance with the allegations noticed in their Petition." PR also filed objections to the Lotfipours' proposed exhibits involving their medical bills on foundation and authentication grounds.

The Lotfipours filed a response to PR's motion in limine on July 30, 2014. They did not resist PR's request to exclude any undisclosed expert opinions or related testimony. But their response strongly contested PR's arguments concerning the "common carrier" issue, asserting PR was on notice of its "common carrier" status since the filing of the petition.

The district court held a hearing on PR's motion in limine and objections on August 4—the morning of trial. The two main points of contention were the "common carrier" theory and the admissibility of the billing statements through the lay testimony of the Lotfipours.

On the "common carrier" issue, PR argued it was surprised by the presentation of that theory for the first time in the Lotfipours' trial brief and, if the court found the Lotfipours had presented the theory earlier, it was dismissed in the summary judgment ruling. PR also argued, if the court was inclined to allow evidence regarding the Lotfipours' "common carrier" theory, it should continue the trial so the defense could obtain expert witnesses. Plaintiff's counsel responded that such expert evidence was not necessary: "What would they designate experts for? The Court decides the law whether [PR is] a common carrier or not, not some expert. And the jury decides what happened if that fits

the definition . . . . So there's no basis for a continuance." PR replied that an expert would be useful to "levy testimony as to the type of dangers the industry guards against" and specifically whether a "deer strike" is the type of danger "a party bus should in fact reasonably anticipate."

On the causation issue, PR's counsel contended the billing-statement exhibits were inadmissible because the Lotfipours did not designate a physician to testify and could not themselves lay proper foundation for the medical bills. PR's counsel argued:

> So whether we do this now or do it in a motion for directed verdict, the issue in the case is that we don't believe any evidence will come in . . . during their case in chief, given the witnesses that they designated and the exhibits that they identified, to prove causation, whether that be for medical expenses past or in the future, or on the basis of a fundamental element of a tort claim, which is causation.

Expressing concern about the causation question, the district court gave the attorneys three hours to perform legal research on the necessity of expert testimony. After the attorneys returned and presented case law in support of their arguments, the district court ruled:

> [U]nless I have missed something in those billing statements, there is nothing in those statements that would indicate sufficiently the causal connection.
> I don't believe the plaintiffs do have the knowledge and experience to opine upon the causation question. And consequently, I think in order to be fair to both parties, I am going to grant a short continuance in this regard. All I can tell you is it's my belief that there has to be something more than has been presented so far by plaintiffs to generate a jury question on the causation question.

PR asked the court to reconsider continuing the trial, arguing the court was allowing the Lotfipours to correct a legal deficiency in their case. Defense

counsel summarized PR's position as follows: "[H]ad this case proceeded to trial today as we thought it should do, and we were sitting through the plaintiffs' evidence, we would have moved for a directed verdict at the close of that evidence. And given that what the Court is intimating, in fact, it may have been granted." The court denied the defense motion to reconsider the continuance, stating it was going to "give plaintiffs the opportunity here, which you are allowed to probe as you wish, regarding additional evidence on the question of causation." In light of the extra time required before the trial could be rescheduled, the court also asked the parties to submit briefs on the "common carrier" issue.

PR sought interlocutory appeal on August 13, 2014. On September 10, 2014, one justice of the Iowa Supreme Court granted PR's application, noting the plaintiffs had not filed a resistance. The Lotfipours asked for reconsideration, and a three-justice panel affirmed the earlier grant of interlocutory review. On April 9, 2015, the supreme court transferred the case to our court.

## II. Standard of Review and Rules Governing Continuances

The parties agree appellate review is for an abuse of discretion. *See State ex rel. Miller v. New Womyn, Inc.*, 679 N.W.2d 593, 595 (Iowa 2004) (explaining Iowa Rule of Civil Procedure 1.911(1) and reiterating the broad discretion afforded district courts in ruling on continuance motions); *see also State v. Leonard*, 240 N.W.2d 690, 692 (Iowa 1976) (finding an abuse of discretion when district court sua sponte continued criminal trial). The district

court abuses its discretion when its ruling rests upon grounds that are clearly untenable or unreasonable. *Loehr v. Mettille*, 806 N.W.2d 270, 277 (Iowa 2011).

Iowa Rules of Civil Procedure 1.910 and 1.911 govern motions for continuance by the parties. Rule 1.910 states: "Motions for continuance shall be filed without delay after the grounds therefor become known to the party or the party's counsel. Such motion may be amended only to correct a clerical error." Iowa R. Civ. P. 1.910(1). The rule continues: "No case assigned for trial shall be continued ex parte. All motions for continuance in a case set for trial shall be signed by counsel, if any, and approved in writing by the party represented, unless such approval is waived by court order." Iowa R. Civ. P. 1.910(2). Rule 1.911 discusses "causes for continuance" and states: "A continuance may be allowed for any cause not growing out of the fault or negligence of the movant, which satisfies the court that substantial justice will be more nearly obtained. It shall be allowed if all parties so agree and the court approves." Iowa R. Civ. P. 1.911(1). If the motion for continuance is based on the absence of evidence, it must be supported by an affidavit from the party or party's attorney. Iowa R. Civ. P. 1.911(2). If the court finds the motion sufficient, the adverse party may avoid the continuance by admitting the witness, if present, would testify to the facts stated in the motion. Iowa R. Civ. P. 1.911(3).

### III.    Analysis of Continuance Ruling

PR raises a single issue on appeal: Did the district court abuse its discretion in ordering a continuance without being asked to do so? PR argues the district court's order went beyond "a mere continuance of the trial date,"

essentially waiving all deadlines pertaining to discovery and witness designation. PR points out the Lotfipours made a "tactical decision to try this case without an expert. It was their position that no expert was needed." PR contends the district court's view that one party's strategy is "unwise" cannot be a ground for ordering a continuance.

The Lotfipours refute the premise of PR's appeal. They argue the court's continuance order was not sua sponte, but rather prompted by PR's request for a continuance to obtain expert testimony on the "common carrier" issue raised in the Lotfipours' trial brief. They contend the district court "acted fairly" in allowing PR to more fully address the "common carrier" issue "in spite of its lack of preparation." As for their strategic decision to proceed without a medical expert on the causation issue, the Lotfipours do not retreat from that position on appeal. Citing *Pexa v. Auto Owners Insurance Co.*, 686 N.W.2d 150, 156 (Iowa 2004), the Lotfipours insist they were prepared for trial and ready to offer lay evidence supporting causation and their entitlement to recover the reasonable and necessary costs of their medical care.

While the Lotfipours devote a substantial portion of their briefing to the substantive issues of whether they provided adequate notice of their "common carrier" theory and whether expert testimony is necessary to prove causation in their personal injury case, we are not called upon to settle either of those matters in this appeal. The only question before us is the propriety of the district court's continuance order. On that question, we disagree with the Lotfipours' revisionist reading of the motion-in-limine hearing.

When the continuance order is read in context, the record leaves no question the district court acted on its own motion and was not granting PR's request for a continuance on the "common carrier" issue. The district court continued the trial in the belief "there has to be something more than has been presented so far by plaintiffs to generate a jury question on the causation question." The court prefaced its continuance order by referencing its review of the medical-bill exhibits, commenting: "I don't believe the plaintiffs do have the knowledge and experience to opine on the causation question." The court then ordered a "short continuance *in this regard.*" (Emphasis added.) The court immediately followed up its continuance order by asking plaintiffs' counsel how long he would "need to address *that issue.*" (Emphasis added.)

When PR urged the court to "reconsider its motion—or its ruling and at this point in time we proceed with the evidence that the parties expect and should present at trial today," the district court responded it "was not intending to allow plaintiffs to correct without defense having an opportunity" to depose any newly designated witnesses. The court ultimately ruled on PR's motion to reconsider as follows: "I'm going to deny the motion and give plaintiffs an opportunity here, which you are allowed to probe if you wish, regarding additional evidence on the question of causation."

As an afterthought, the court discussed the "common carrier" issue. The court declined to rule on the Lotfipours' ability to pursue that theory, stating, "I am not persuaded right now that common carrier should be allowed to go forward."

But because the court already had continued the trial, it then requested the parties submit briefing on the "common carrier" issue "in the interim."

Our focus today is on the reason given by the district court for the sua sponte continuance. *See Leonard*, 240 N.W.2d at 692–93 (considering reasons stated by the court for continuing a criminal trial on its own motion and finding the reasons did not constitute good cause). PR argues "the sole purpose of the continuance ordered by the district court was to aid one of the parties to the detriment of the other."

We agree the result of the district court's action was to favor the Lotfipours' case. The district court abused its discretion by granting a continuance to give the plaintiffs "an opportunity to correct" what the court perceived as a deficiency in their ability to prove causation. By doing so, the court slipped into an adversarial role by guiding the plaintiffs toward the court's view of a more fruitful trial strategy. *See In re S.P.*, 719 N.W.2d 535, 539 (Iowa 2006) (holding district court's questioning of witnesses in search of evidence proving the case for one side "changed the court's role from an impartial decision-maker to an advocate").

Rules 1.910 and 1.911 discuss only continuances requested by the parties. Assuming a district court has inherent authority to order a continuance on its own initiative under certain circumstances, we find continuing the trial for the reasons announced by the district court here was an abuse of discretion. Borrowing the standard from rule 1.911(1), we are not satisfied "substantial

justice was more nearly obtained" by the court sua sponte approving a delay on the day of trial.

Having decided the court abused its discretion in sua sponte continuing the trial, we must fashion an appropriate remedy. PR urges us to remand for trial "with the directive that the evidence and procedural status of the case be considered frozen as it existed when the trial was set to begin on August 4, 2014, with enforcement of all deadlines relating to the presentation of evidence and witnesses (including experts)." We conclude a remand structured in that way is the best means of restoring the parties to their relative positions at the time of the unsolicited continuance. We do not entertain the Lotfipours' request that PR also be restricted from obtaining an expert witness concerning the "common carrier" theory; that issue remains to be addressed by the district court.

**REVERSED AND REMANDED WITH DIRECTIONS.**